FILED

MAY 21 2008

MAY 2 1 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RONALD MILOW MILOSLAVSKY and §
NICHOLAS JOHN CARLOS §
§
§    **08CV2940**
Plaintiffs, §
§    **JUDGE KENDALL**
§
vs. §    **MAG.JUDGE COLE**
§
RUBY C. SUMMERS §
§
Defendant. §

### PLAINTIFFS MEMORANDUM IN SUPPORT
### OF MOTION TO CONFIRM DOMESTIC ARBITRATION AWARD

Plaintiffs RONALD MILOW MILOSLAVSKY ("Milow") and NICHOLAS JOHN

CARLOS ("Carlos") ask the court to confirm the domestic arbitration award against RUBY C.

SUMMERS ("Summers"):

### A.  Introduction

1.     Plaintiff Milow is an individual residing at 10108 Peach Parkway, M202, Skokie,

Illinois 60076.

2.     Plaintiff Carlos is an individual residing at 142-30 Sanford Avenue, Unit 2S,

Flushing, New York 11355.

3.     Defendant Summers is an individual formerly known as "Ruby Hay" doing

business at 400 East Pratt Street, 8th Floor, Baltimore, Maryland 21202.

4.     Plaintiffs brought an arbitration proceeding against Defendant for breach of

contract, fraud, breach of fiduciary duties and conversion with respect to a Memorandum of

Understanding between the parties, dated March 31, 2005 (the "Agreement") which is attached

as Exhibit 1 and incorporated into this motion by reference.  Arbitration of the dispute was

1

initiated pursuant the arbitration provision set forth in Section 8.3 of the Agreement. Venue in the American Arbitration Association's Chicago Regional Office was proper by virtue of Section 8.3 of the Agreement as injured party Claimant Milow resides in Cook County, Illinois.

5.     On April 27, 2007, an arbitration hearing was held before Thomas P. Sullivan (the "Arbitrator". On May 23, 2007, the Arbitrator issued an award in favor of the Plaintiffs. Specifically, the Arbitrator found the Defendant (i) committed a material breach of the Agreement; (ii) engaged in willful, deliberate, actual fraudulent conduct in her dealings with the Plaintiffs, (iii) breached her fiduciary duties to the Plaintiffs; and (iv) willfully failed to participate fairly and reasonably in the arbitration proceeding. The Award of Arbitration is attached as Exhibit 2 and incorporated into this motion by reference. The Arbitrator awarded the Plaintiffs (i) actual damages in the amount of $125,684.26, (ii) fees and expenses in the amount of $4,425.00; and (iii) punitive damages of $250,000.

6.     Plaintiffs file this motion to confirm the domestic arbitration award.

### B. Standard of Review

7.     The court's review of the arbitration process is severely limited. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-38, 108 S. Ct. 364, 370-71 (1987); Wonderland Greyhound Park, Inc. v. Autonote Sys., Inc., 274 F. 3d 34, 35 (1st Cir. 2001).

### C. Argument

8.     On a timely filed motion to confirm a domestic arbitration award with the proper attachments, confirmation of a domestic arbitration award is presumed unless there are grounds for modification or vacation. 9 U.S.C. §§9, 13; see Booth v. Hume Publ'g, Inc., 902 F.2d 925, 932 (11th Cir. 1990).

9.      A motion to confirm a domestic arbitration award must be filed within one year after the award is made.  9 U.S.C. §9.  A motion to modify or vacate a domestic arbitration award must be made within three months after the award is filed or delivered.  9 U.S.C. §12; Florasynth, Inc. v. Pickholz, 750 F.2d 171, 174-75 (2d Cir. 1984).  In this case, the award was issued on May 23, 2007, and Defendant has not filed a motion to modify or vacate the arbitration award.  Therefore, this motion was timely filed, and any future motions to modify or vacate the arbitration award would be untimely.  RGA Reins. Co. v. Ulico Cas. Co., 355 F.3d 1136, 1139-40 (8th Cir. 2004); Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986).

10.     An arbitration award must be confirmed when the parties have provided in the arbitration agreement that a judgment will be entered on the arbitration award.  9 U.S.C. §9.  As set forth in Section 8.3 of the Agreement attached as Exhibit 1, the arbitration award may be to any competent court having jurisdiction thereof.  This court has subject-matter jurisdiction of this matter as there is diversity among the parties and venue is proper as this is the district where the award was made.

11.     There are no grounds for modifying or vacating the award in this case, and the Arbitrator's decision and award are correct.

12.     Because this motion, proposed order, and proper attachments have been filed and because there are no grounds for modifying or vacating the award, the court must confirm the domestic arbitration award in this case.  9 U.S.C. §§9, 13.

### D.  Attachments

13.     In support of this motion to confirm, Plaintiffs include documents in the attached appendix, which is incorporated by reference.  9 U.S.C. §13.  Specifically attached is, Exhibit 1 - Memorandum of Understanding between the parties, dated March 31, 2005, and Exhibit 2 –

Award of Arbitrator.  Plaintiffs request that the court include the attached documents with its order confirming the arbitration award.

### E.  Conclusion

14.    For these reasons, Plaintiffs ask the court to confirm the domestic arbitration award and enter judgment in accordance with the award.

Dated: Chicago, Illinois
       May 21, 2008



Gregory S. Levine, Esq.
(ARDC No. 6203129)
300 South Wacker Drive, Suite 2300
Chicago, IL 60606
Phone: (312) 399-4422
Facsimile: (312) 284-4522
e-mail: glevine@ivp-ny.com

ATTORNEY IN CHARGE FOR PLAINTIFFS,
RONALD MILOW MILOSLAVSKY and
NICHOLAS JOHN CARLOS

## EXHIBIT LIST

Exhibit 1        Memorandum of Understanding between the parties dated March 31, 2005

Exhibit 2        The Award of Arbitration dated May 23, 2007

1

EXHIBIT 1



## MEMORANDUM OF UNDERSTANDING (for Project Funding)

### Transaction Code: MLW05/3-SUM300M
### Page 1 of 46

**This Memorandum of Understanding (for Project Financing)** (the "Agreement") is a full recourse, commercial contract made and entered on this 30th day of March 2005, by and among Ruby C. Summers, whose principal business address is 400 East Pratt Street, Eighth (8th) Floor, Baltimore, Maryland 21202 (USA) (hereinafter "SUMMERS"), Ronald Milow Miloslavsky, whose principal address is 10108 Peach Parkway, M202, Skokie, Illinois 60076 (hereinafter "MILOW"), and Nicholas John Carlos, whose principal address is 142-30 Sanford Avenue, Unit 2S, Flushing, New York 11355 (hereinafter "CARLOS"). SUMMERS, MILOW and CARLOS shall be referred to as "Party" individually and collectively as "Parties".

### WITNESSETH:

**WHEREAS**, the Parties are contemplating various commercial financial transactions for the purpose of assisting SUMMERS, MILOW and CARLOS to independently finance their separate, Commercial and Humanitarian projects (hereinafter "the Transaction");

**WHEREAS**, MILOW and CARLOS desire SUMMERS to assist them in receiving:
(a)  a Five Million US Dollar ($5,000,000.) Business Loan ("5M Business Loan") for a period of One (1) Year at an Annual Percentage Rate of Twelve Percent (12%) ("12% Rate of Interest"), payable in arrears with no prepayment penalty; and,
(b) an additional Fifty Million US Dollar ($50,000,000.) Business Loan ("$50M Business Loan") for a period of One (1) Year at an Annual Percentage Rate of Twelve Percent (12%) ("12% Rate of Interest"), payable in arrears with no prepayment penalty  (collectively the "Total $55M Business Loans"), within one (1) calendar month of receiving the $5M Business Loan, in order to assist MILOW and CARLOS in funding the Ukrainian Gas and Power project ("Gas and Power project");

**WHEREAS**, SUMMERS, MILOW and CARLOS shall form a special purpose limited liability company, Summers & Lowtis, LLC, ("Summers & Lowtis"), in the State of Maryland, in order to receive the Total $55M Business Loans from AMT Financial, a Qualified Institutional Investor introduced by SUMMERS;

**WHEREAS**, SUMMERS shall be the Managing Member of Summers & Lowtis, LLC, and MILOW and CARLOS shall be Non-Managing Members of Summers & Lowtis, LLC;

**WHEREAS**, SUMMERS, MILOW and CARLOS desire to cause Summers & Lowtis, LLC to issue:
(a)  a One (1) Year, Five Million US Dollar ($5,000,000.) Corporate Promissory Note ("$5M Corporate Promissory Note") at an Annual Percentage Rate of Twelve Percent (12%) ("12% Rate of Interest"), payable in arrears with no prepayment penalty, in order to secure the $5M Business Loan; and,
(b) an additional One (1) Year, Fifty Million US Dollar ($50,000,000.) Corporate Promissory Note ("$50M Corporate Promissory Note at an Annual Percentage Rate of Twelve Percent (12%) ("12% Rate of Interest"), payable in arrears with no prepayment penalty, in order to secure the $50M Business Loan;

**WHEREAS**, SUMMERS, MILOW and CARLOS desire to allocate, under Summers & Lowtis, LLC, the $5M Business Loan and the $50M Business Loan as a Five Million US Dollar ($5,000,000.) Capital Contribution ("$5M Capital Contribution") and a Fifty Million US Dollar ($50,000,000.) Capital Contribution ("$50M Capital Contribution") (collectively the "Total $55M Capital Contributions") in Tri-Star Development Holdings, LLC, a Maryland Limited Liability Company, in which SUMMERS and Michael E. Davis, President/CEO of AMT Financial, are Managing Members, and AMT Financial is a Non-Managing Member;

SUMMERS _RCS_            MILOW_____             CARLOS _NC_

**WHEREAS**, SUMMERS, MILOW and CARLOS desire the Total $55M Capital Contributions in Tri-Star Development Holdings, LLC to assist Summers & Lowtis in the continued funding of the Ukrainian Gas and Power project by way of any profits generated through the various purchases and resales of "investment grade", fixed income securities made available through Banks and Broker-Dealers introduced by SUMMERS and Michael E. Davis, President/CEO of AMT Financial;

**WHEREAS**, SUMMERS shall cause AMT Financial to cause the good delivery, via authenticated SWIFT, Three (3) Year, valid Bank Guarantees ("$300M Bank Guarantees"), as per the attached *Exhibit D: ("Bank Guarantee Wording")*, issued by Toronto Dominion Bank in the total Principal Face Value of Three Hundred Million US Dollars ($300,000,000.) for the benefit of various commercial projects, including but not limited to Merciful Employment ("Merciful Employment"), the Ukrainian Gas and Power project ("Gas and Power project"), etc.;

**WHEREAS**, SUMMERS shall arrange its Qualified Institutional Investor ("SUMMERS' BG Funder") to release to AMT Financial a Principal Amount of Two Hundred Twenty Eight Million US Dollars ($228,000,000.) ("$228M Allocation"), in exchange for the $300M Bank Guarantees;

**WHEREAS**, SUMMERS shall arrange AMT Financial to confirm in writing, as per the attached *Exhibit B1/3: ("AMT'S Conditional Funding Commitment")*, to SUMMERS of AMT Financial's readiness:
(a)   to provide the **$5M Business Loan** to Summers & Lowtis, LLC, subject to Summers & Lowtis providing:

      (1) a $5M Corporate Promissory Note from Summers & Lowtis, bearing a 12% Rate of Interest; and,

      (2) a Refundable, Commitment Fee of Sixty Thousand US Dollars ($60,000.) ("$60K Commitment Fee"). One Hundred Percent (100%) of the $60K Commitment Fee shall be applied to the first month's interest and shall be fully refundable, *immediately* in the event that:

          (a) AMT Financial does not cause Toronto Dominion Bank to issue Three (3) Year, valid Bank Guarantees in the total Principal Amount of Three Hundred Million US Dollars ($300,000,000.) ("$300M Bank Guarantees"), within ten (10) U.S. banking days of Summers & Lowtis transferring the $60K Commitment Fee directly to the Accounting Department for AMT Financial; and,

          (b) AMT Financial does not provide the $5M Business Loan to Summers & Lowtis from the funding proceeds of the $300M Bank Guarantees ("BG Funding Proceeds"), within five (5) U.S. banking days of receiving the BG Funding Proceeds; and,

          (c) a Non-Refundable, Expense Fee of Fifteen Thousand US Dollars ($15,000.) ("15K Expense Fee"). Said $15K Expense Fee is non-refundable and shall be used to remit payments for the general time and expenses for any travel, postage, phone, document drafting for the $300M Bank Guarantees issue, the $5M Business Loan, etc.;

(b)   to provide the **$50M Business Loan** to Summers & Lowtis, LLC, subject to Summers & Lowtis providing:

      (1) a $50M Corporate Promissory Note from Summers & Lowtis, bearing a 12% Rate of Interest; and,

      (2) a Refundable, Commitment Fee of Five Hundred Thousand US Dollars ($500,000.) ("$500K Commitment Fee"). One Hundred Percent (100%) of the $500K Commitment Fee shall be applied to the first month's interest and shall be fully refundable, *immediately* in the event that:

          (a) AMT Financial does not provide the $50M Business Loan to Summers & Lowtis, within ten (10) U.S. banking days of receiving $500K Commitment Fee; and,

SUMMERS _____   MILOW _____   CARLOS _____

MOU Agreement (for Project Financing)
MLW05/3-SUM300M

Page 3 of 7    Ron Milow Miloslavsky & Nicholas Carlos    Ruby C. Summers

(b) a Non-Refundable, Expense Fee of Fifteen Thousand US Dollars ($15,000.) ("15K Expense Fee"). Said $15K Expense Fee is non-refundable and shall be used to remit payments for the general time and expenses for any travel, postage, phone, document drafting for the $50M Business Loan, etc.;

(c) to allow the Total $55M Business Loans to be used as a Total $55M Capital Contribution to Tri-Star Development Holdings, LLC, in order to further assist Summers & Lowtis in the continued funding of the Ukrainian Gas and Power project by the various purchase and resale of "investment grade", fixed income securities made available through Banks and Broker-Dealers introduced by SUMMERS and Michael E. Davis, President/CEO of AMT Financial;

**WHEREAS,** SUMMERS shall arrange Tri-Star Development Holdings, LLC to confirm in writing, as per the attached *Exhibit F: ("Tri-Star's Member Acceptance Letter"),* to Summers & Lowtis of Tri-Star's readiness to accept the Total $55M Capital Contribution for the various purchase and resale of "investment grade", fixed income securities made available through Banks and Broker-Dealers introduced by SUMMERS and Michael E. Davis, President/CEO of AMT Financial. Tri-Star's Member Acceptance Letter shall not be provided, until Summers & Lowtis has the $5M Capital Contribution to supply;

**WHEREAS,** SUMMERS, MILOW and CARLOS have entered into this Transaction, in return for the financial consideration(s) outlined in Articles Four (4) and Six (6) herein.

**NOW THEREFORE,** in consideration of the various promises, covenants and undertakings contained herein above and below, and for additional good and valuable consideration, the adequacy and receipt of which is hereby acknowledged upon execution of this Agreement, to include all Exhibits, Schedules and Attachments to the Agreement, SUMMERS, MILOW and CARLOS agree as follows:

## ARTICLE 1 - Definitions

1.1    **Capital Contribution** shall mean an investment of Principal Funds.

1.2    **Qualified Institutional Investor** shall mean an Individual or Entity having a Total Net Worth of at least One Hundred Million US Dollars ($100,000,000.).

1.3    **Net Profits** shall mean GROSS Profits minus any and all Fees and Commissions to Bank(s) and/or Broker/Dealer(s), and Fees to any and all Intermediaries.

1.4    **Provision(s)** shall mean and include all the provisions, recitals, agreements, covenants, terms, conditions, promises, obligations, representations and warranties made herein.

1.5    **Sources** shall mean and include a Party's direct and indirectly related third party entities within the Transaction herein, to include: the Securities Seller, Exit Buyers, and the introducing party(s) of a Source(s).

## ARTICLE 2 – Contract Term

2.1    **Original Term:** This Agreement shall remain in full force and effect upon notarized, written termination by SUMMERS or MILOW, as provided for under Article 5.0.

SUMMERS _CS_            MILOW _____            CARLOS _NC_

| MOU Agreement (for Project Financing) | Ruby C. Summers |
|---|---|
| MLW05/3-SUM300M | Page 4 of 46  Ron Milow Miloslavsky & Nicholas Carlos |

2.2  **Extension of Term.**  If and when any undersigned Party and/or its third party Source(s) shall directly or indirectly initiate, re-initiate, or continue its business dealings with an introducing Party's Source(s) and/or similar Transaction(s) after the Original Term, then this Agreement in its entirety, shall automatically extend for an additional three (3) year term (herein referred to as an "Extended Term" of the Agreement). The Extended Term shall not cumulatively exceed three (3) years beyond the Original Term, unless the term of future executed transaction agreements extends beyond three (3) years.

## ARTICLE 3  -  Representations, Warranties and Reliance

3.1.  **SUMMERS Representations and Warranties:** SUMMERS hereby irrevocably guarantees, represents and warrants herewith that the following statements are true and accurate:

(a)  AMT Financial is prepared to confirm, in writing to SUMMERS as per the attached *Exhibit B1/3: ("AMT'S Conditional Funding Commitment")*, of AMT Financial's readiness:

(1)  to provide the **$5M Business Loan** to Summers & Lowtis, LLC, subject to Summers & Lowtis providing:

(a)  a $5M Corporate Promissory Note from Summers & Lowtis, bearing a 12% Rate of Interest; and,

(b)  a Refundable, Commitment Fee of Sixty Thousand US Dollars ($60,000.) ("$60K Commitment Fee"). One Hundred Percent (100%) of the $60K Commitment Fee shall be applied to the first month's interest and shall be fully refundable, *immediately* in the event that:

(1)  AMT Financial does not cause Toronto Dominion Bank to issue Three (3) Year, valid Bank Guarantees in the total Principal Amount of Three Hundred Million US Dollars ($300,000,000.) ("$300M Bank Guarantees"), within ten (10) U.S. banking days of Summers & Lowtis transferring the $60K Commitment Fee directly to the Accounting Department for AMT Financial;

(2)  AMT Financial does not provide the $5M Business Loan to Summers & Lowtis from the funding proceeds of the $300M Bank Guarantees ("BG Funding Proceeds"), within five (5) U.S. banking days of receiving the BG Funding Proceeds; and,

(3)  a Non-Refundable, Expense Fee of Fifteen Thousand US Dollars ($15,000.) ("15K Expense Fee"). Said $15K Expense Fee is non-refundable and shall be used to remit payments for the general time and expenses for any travel, postage, phone, document drafting for the $300M Bank Guarantees issue, the $5M Business Loan, etc.  *However, in the event that AMT Financial does not provide the $5M Business Loan to Summers & Lowtis, then the $15K Expense Fee would be refunded to MILOW and CARLOS, within thirty (30) calendar days of receiving said $15K Expense Fee;*

(2)  to provide the **$50M Business Loan** to Summers & Lowtis, LLC, subject to Summers & Lowtis providing:

(a)  a $50M Corporate Promissory Note from Summers & Lowtis, bearing a 12% Rate of Interest; and,

(b)  a Refundable, Commitment Fee of Five Hundred Thousand US Dollars ($500,000.) ("$500K Commitment Fee"). One Hundred Percent (100%) of the $500K Commitment Fee shall be applied to the first month's interest and shall be fully refundable, *immediately* in the event that:

(1)  AMT Financial does not provide the $50M Business Loan to Summers & Lowtis, within ten (10) U.S. banking days of receiving $500K Commitment Fee; and,

SUMMERS _____    MILOW _____    CARLOS _____

(2) a Non-Refundable, Expense Fee of Fifteen Thousand US Dollars ($15,000.) ("15K Expense Fee"). Said $15K Expense Fee is non-refundable and shall be used to remit payments for the time and expenses for any travel, postage, phone, document drafting for the $50M Business Loan, etc.;

(b) AMT Financial is prepared to cause the good delivery, via authenticated SWIFT, Three (3) Year, valid Bank Guarantees ("$300M Bank Guarantees"), as per the attached *Exhibit D: ("Bank Guarantee Wording")*, issued by Toronto Dominion Bank in the total Principal Face Value of Three Hundred Million US Dollars ($300,000,000.) for the benefit of various commercial projects, including but not limited to Merciful Employment ("Merciful Employment"), the Ukrainian Gas and Power project ("Gas and Power project"), etc.;

(c) SUMMERS' Qualified Institutional Investor ("SUMMERS' BG Funder") is prepared to release to AMT Financial a Principal Amount of Two Hundred Twenty Eight Million US Dollars ($228,000,000.) ("$228M Allocation"), upon the SUMMERS' BG Funder's receipt of the $300M Bank Guarantees via authenticated SWIFT;

(d) SUMMERS shall cause Tri-Star Development Holdings, LLC to confirm in writing to Summers & Lowtis, as per the attached *Exhibit F: ("Tri-Star's Member Acceptance Letter")*, Tri-Star's readiness to accept the Total $55M Capital Contribution for the various purchase and resale of "investment grade", fixed income securities made available through Banks and Broker-Dealers introduced by SUMMERS and Michael E. Davis, President/CEO of AMT Financial. Tri-Star's Member Acceptance Letter shall not be provided, until Summers & Lowtis has the $5M Capital Contribution to supply;

(e) SUMMERS shall transfer the required $60K Commitment Fee and $15K Expense Fee, as directed by AMT Financial and upon SUMMERS' receipt of the $60K Commitment Fee and $15K Expense Fee from MILOW and CARLOS; and,

(f) SUMMERS shall cause AMT Financial to provide a letter confirming receipt of the $60K Commitment Fee and $15K Expense Fee, per the attached *Schedule Three (3): "AMT'S Receipt of Fees"*.

3.2   **MILOW and CARLOS Representations and Warranties:**   MILOW and CARLOS hereby, jointly and severally, irrevocably guarantee, represent and warrant herewith that the following statements are true and accurate:

(a) MILOW and CARLOS readily has the required $60K Commitment Fee and the $15K Expense Fee to transfer to SUMMERS, within one (1) U.S. banking day of:
(1) signing this Agreement; and,
(2) verifying the attached *Exhibit B1/3: AMT'S Conditional Funding Commitment* with Michael E. Davis, President/CEO of AMT Financial.

(b)     the Seventy Five Thousand US Dollars ($75,000.) for the $60K Commitment Fee and $15K Expense Fee are assets of MILOW and CARLOS; therefore, MILOW and CARLOS hold SUMMERS, AMT Financial and Michael E. Davis, Pres/CEO and their agents, assigns, successors and affiliates harmless of any Third Party claims that may arise from any and all costs, claims, judgments, damages, liabilities, losses and expenses to which either Party may become subject under third Party civil suits, federal or state law or otherwise relating to or alleged to be relating to or arising out of errors in judgment, acts, omissions, misstatements or failure to act, when performed in good faith as it relates to the $60K Commitment Fee and the $15K Expense Fee;

SUMMERS _____   MILOW _____   CARLOS _____

| MOU Agreement (for Project Financing) | *Ac* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 6 of 8   Ron Milow Miloslavsky & Nicholas Carlos | |

(c)    MILOW and CARLOS, as Non-Managing Members of Summers & Lowtis, LLC, shall agree to cause Summers & Lowtis, LLC:

(1) to provide AMT Financial the required $5M Corporate Promissory Note and the $50M Corporate Promissory Note, in exchange for the $5M Business Loan and the $50M Business Loan, respectively; and,

(2) to allocate the Total $55M Business Loans as a Total $55M Capital Contribution to Tri-Star Development Holdings, LLC.

(d)    MILOW and CARLOS understand and fully accept the risk(s) associated to this Transaction, involving their participation in receiving the Total $55M Business Loans for Summers & Lowtis, LLC and allocating the Total $55M Business Loans as a Total $55M Capital Contribution to Tri-Star Development Holdings, LLC for the various purchase and resale of "investment grade", fixed income securities, in order to further assist MILOW and CARLOS in funding their Gas & Power project;

(e)    MILOW and CARLOS understand and fully accept that profits from the purchase and resale of the "investment grade" fixed income securities are not guaranteed by Ruby C. Summers, Tri-Star Development Holdings, LLC or AMT Financial, therefore, are not relying on such; and,

(f)    MILOW and CARLOS shall maintain a personal commitment to complete the Ukrainian Gas and Power project and any other commercial and humanitarian project(s) in distressed communities.

3.3    **Mutual Representations, Warranties & Cooperation**.    Each Party hereby irrevocably guarantees, represents, and warrants to the other Party herein, that as of the date hereof:

(a) **Authority to Execute and Perform Agreement.** Such Party, on behalf of itself and all its applicable partners, beneficiaries, shareholders, officers, directors, committee members and board members, has all requisite power, authority and approval required to enter into, execute and deliver this Agreement, together with its authority to hold, own and operate its business and assets, including the delegation of authority as now or to be later conducted, and to perform fully its obligations hereunder all without further required consent theretofore; and that such execution, delivery, performance, and the consummation of the

Transactions contemplated herein shall not be in violation of any law, securities act or regulation, contract, corporate resolution, charter, by-law, regulation or court order to which it is a party of or bound by.

**Competency of Material Facts and Reliance.** Such Party represents and warrants that all delivered materials, documents and other information both written and/or verbally generated by, for and about itself only, shall be materially complete, factual, accurate and without omission to the best of the Party's knowledge, ability and belief. Furthermore, such Party does not make any representation or warranty whatsoever, express or implied, as to the accuracy, validity, legality or completeness of third party information materials. The Parties hereto and their Sources have not and will not rely upon such third party information materials or assurances, but instead will rely exclusively upon its own investigation, inspection and analysis of the applicable facts, histories, circumstances, governing laws, principals and applicable risks.

(b) **Developments.** Upon the reliance of good business practices, and the understanding how time sensitive information and documents may potentially affect relationships and a Transaction's outcome, and for purposes of protecting the other Party's financial position, each Party agrees, on a best efforts basis, without delay, to fully inform and deliver to the other Party hereto, its first knowledge and receipt of all Transaction related developments, information, negotiations, documents, and distribution account

SUMMER_____    MILOW_____    CARLOS_____

| MOU Agreement (for Project Financing) | *Alt* | Ruby C. Summers |
| MLW05/3-SUM300M | Page 7 of 7    Ron Milow Miloslavsky & Nicholas Carlos |

information, and all agreements that would be construed as materially important, relevant or affecting a Transaction's outcome, third party relationships, and a Party's rights to remuneration.

(c) **Advance Notice of Commencement and Closing.** Each Party has the right to adequate advance notice of the time and place of a Transaction's commencement and closing.

(d) **Reliance Upon Tax, Accounting, Financial and Legal Advice.** The Parties each represent and warrant that they have in no way relied upon, nor shall they in the future rely upon another Party for any tax, accounting, financial, securities and/or legal advice concerning this Transaction or Agreement.

(e) **Continuation of Representations and Warranties.** All the representations and warranties made within the body of this Agreement shall remain valid, true and accurate from the first date written above until the Original and Extended Term(s) of this Agreement, unless otherwise notified.

## ARTICLE 4 - Procedural Obligations and Rights

4.0  The procedures herein-below shall be deemed as the necessary and integral obligations and rights of each Party in the following order of priority:

(a)  Within one (1) U.S. banking day of receiving a countersigned copy of this Agreement, Summers shall:
> (1)  form Summers & Lowtis, LLC ("Summers & Lowtis"), in the State of Maryland, naming Ruby C. Summers as Managing Member, and Ronald Milow Miloslavsky and Nicholas John Carlos as Non-Managing Members (collectively "The Members"); and,
> (2)  provide the Articles of Organization to be signed by The Members.

(b)  Within one (1) U.S. banking day of the above 4(a)(1) and 4(a)(2), SUMMERS, MILOW and CARLOS shall cause Summers & Lowtis to provide AMT Financial a written request, as per the attached **Exhibit A: ("Funding Request")**, to borrow the Total $55M Business Loans which shall be used as a Total $55M Capital Contribution to Tri-Star Development Holdings, LLC;

(c)  Within one (1) U.S. banking day of the above 4(b), SUMMERS shall cause AMT Financial:
> (1)  to issue Summers & Lowtis the attached **Exhibit B1/3: "AMT'S Conditional Funding Commitment"** to provide the Total $55M Business Loans; and,
> (2)  to provide Summers & Lowtis the attached **Schedule Seven (7): ("Total $55M Business Loans Payoff Account Details")**.

(d)  Immediately upon receipt of AMT'S Conditional Funding Commitment, SUMMERS, MILOW and CARLOS shall verify same with AMT Financial;

(e)  Within one (1) U.S. banking day of the above 4(d), SUMMERS shall remit to AMT Financial the required Expense Fee for and on behalf of Summers & Lowtis;

(f)  Within one (1) U.S. banking day of the above 4(e), MILOW and CARLOS shall wire transfer the $15K Expense Fee to SUMMERS, as per the attached **Schedule One (1): ("$15K Expense Fee Account")**;

SUMMERS _____    MILOW _____    CARLOS _____

(g)  Within five (5) U.S. banking days of the above 4(d), MILOW and CARLOS shall wire transfer the $60K Commitment Fee directly to The Accounting Department of AMT Financial, as per the attached *Schedule Two (2): ("$60K Commitment Fee Account")*;

(h)  Within seven (7) U.S. banking days of the above 4(g), SUMMERS shall cause AMT:

(1) to cause the good delivery of the $300M Bank Guarantees issued by Toronto Dominion Bank, via authenticated SWIFT to AMT Financial's designated account and as per the attached *Exhibit D1/2: ("Bank Guarantee Wording")*; and,

(2) to provide SUMMERS the attached *Exhibit D2/2: ("SWIFT Copy of $300M BGs")*.

(i)  Within five (5) U.S. banking days of the above 4(h) and upon SUMMERS' BG Funder's receipt of the $300M Bank Guarantees, SUMMERS shall cause SUMMERS' BG Funder to release a Principal Amount of Two Hundred Twenty Eight Million US Dollars ($228,000,000.) ("BG Funding Proceeds") to AMT Financial's designated account(s);

(j)  Within five (5) U.S. banking days of the above 4(i), SUMMERS shall cause AMT Financial to provide Summers & Lowtis:

(1) a written, bank confirmation of the $5M Business Loan, as per the attached *Exhibit B2/3: ("Bank Confirmation of the $5M Business Loan")*; and,

(2) a written document from AMT, as per the attached *Exhibit B3/3: ("Delivery Request of the $5M Corporate Promissory Note")*, requesting for delivery of the $5M Corporate Promissory Notes issued by Summers & Lowtis, LLC;

(k)  Within one (1) U.S. banking day of the above 4(j)(1) and 4(j)(2), SUMMERS, MILOW and CARLOS shall cause Summers & Lowtis to deliver the attached *Exhibit C1/2: $5M Corporate Promissory Note* to AMT Financial, via overnight bonded courier;

(l)  Within one (1) U.S. banking day of the above 4(k), SUMMERS, MILOW and CARLOS shall cause Summers & Lowtis to provide Tri-Star Development Holdings, LLC ("Tri-Star") the attached:

(1) *Exhibit E1/3: ("Letter of Request to Invest")*, requesting to provide, as potential Members of Tri-Star, a $5M Capital Contribution for the purchase and resale of "investment grade" fixed income securities, in order to further assist Summers & Lowtis in funding its Gas and Power project;

(2) *Exhibit E2/3: ("Investor's Background Details")*;

(3) *Exhibit E3/3: ("Bank Confirmation of the $5M Capital Contribution")*; and,

(4) *Schedule Four (4): Summers & Lowtis' Profit Account Details*;

(m)  Within three (3) U.S. banking days of the above 4(l), SUMMERS shall cause Tri-Star Development Holdings:

(1) to provide Summers & Lowtis the attached *Exhibit F: ("Tri-Star's Member Acceptance Letter")*, confirming Tri-Star's acceptance of Summers & Lowtis' Request to Invest as New Members of Tri-Star Development Holdings, LLC;

(2) to provide Summers & Lowtis the attached *Schedule Five (5): ("Tri-Star's Account Details")*;

(3) to establish a segregated account for Summers & Lowtis under the Account Title: "Tri-Star Development Holdings, LLC FBO Summers & Lowtis, LLC" ("the Members' Joint Account"), whereby a Managing Member of Tri-Star Development Holdings and a Managing Member of Summers & Lowtis will be joint signatories to the Members Joint Account; and,

(4) to provide Summers & Lowtis the attached *Schedule Six (6): Members' Joint Account Details*;

SUMMERS _____   MILOW _____   CARLOS _____

| MOU Agreement (for Project Financing) | | Ruby C. Summers |
| MLW05/3–SUM300M | Page 9 of 9   Ron Milow Miloslavsky & Nicholas Carlos | |

(n)    Within one (1) U.S. banking day of the above 4(m)(1) through 4(m)(3), SUMMERS, MILOW and CARLOS shall cause Summers & Lowtis to request AMT Financial, as per the attached *Exhibit G1/3: ("Request to Transfer $5M Capital Contribution")*, to transfer the $5M Business Loan as Summers & Lowtis' $5M Capital Contribution to Tri-Star's Account Details as per the attached Schedule Five (5);

(o)    Within two (2) U.S. banking days of the above 4(n), SUMMERS shall cause AMT Financial:
(1)    to wire transfer, as per the Tri-Star's Account Details, the $5M Business Loan as Summers & Lowtis' $5M Capital Contribution to Tri-Star Development Holdings, LLC; and,
(2)    to provide Summers & Lowtis the attached *Exhibit G2/3: ("Copy of $5M Capital Contribution Wire Transfer")*.

(p)    Within one (1) U.S. banking day of the above 4(o)(1) and 4(o)(2), SUMMERS shall cause Tri-Star Development Holdings to provide Summers & Lowtis the attached *Exhibit G3/3: ("Tri-Star's Receipt of $5M Capital Contribution")*;

(q)    Within five (5) U.S. banking days of the above 4(p), SUMMERS shall cause Tri-Star Development Holdings, LLC to commence the purchase and resale of "investment grade" fixed income securities, using the $5M Capital Contribution;

(r)    Within ten (10) U.S. banking days of the above 4(q) and upon receipt of at least Seven Hundred Thousand US Dollars ($700,000.) in profits in the attached *Schedule Four (4): Summers & Lowtis' Profit Account Details*, SUMMERS, MILOW and CARLOS shall cause Summers & Lowtis to provide AMT Financial:
(1) the attached *Exhibit I: ("Copy of $500K Commitment Fee Wire Transfer")*;
(2) the attached *Exhibit C2/2: ("$50M Corporate Promissory Note")*; and,
(3) the attached *Exhibit H1/3: ("Request to Transfer $50M Capital Contribution")*.

(s)    Within two (2) U.S. banking days of the above No. 4(r)(1) through 4(r)(3), SUMMERS shall cause AMT Financial:
(1)    to wire transfer, as per the Members' Joint Account Details in the attached *Schedule Six (6)*, the $50M Business Loan as Summers & Lowtis' $50M Capital Contribution to Tri-Star Development Holdings, LLC; and,
(2)    to provide Summers & Lowtis the attached *Exhibit H2/3: ("Copy of $50M Capital Contribution Wire Transfer")*.

(t)    Within one (1) U.S. banking day of the above 4(s)(1) and 4(s)(2), SUMMERS shall cause Tri-Star Development Holdings:
(1)    to provide Summers & Lowtis the attached *Exhibit H3/3: ("Tri-Star's Receipt of $50M Capital Contribution")*; and,
(2)    to commence  the purchase and resale of "investment grade" fixed income securities, using the $50M Capital Contribution;

(u)    Upon receipt of profits in the Summers & Lowtis' Profit Account, as per the attached *Schedule Four (4)*, MILOW and CARLOS shall cause Summers & Lowtis to provide funds to the Ukrainian Gas and Power project;

SUMMERS CCS          MILOW          CARLOS

| MOU Agreement (for Project Financing) | | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 10 of 10  Ron Milow Miloslavsky & Nicholas Carlos | |

    (v)  <u>After having successfully generated and received Sixty Two Million US Dollars ($62,000,000.) in profits through Tri-Star Development Holdings</u>, SUMMERS, MILOW and CARLOS shall cause Summers & Lowtis, LLC to provide Tri-Star Development Holdings the attached *Exhibit J1/3: ("Request to Withdraw $55M Capital Contribution")*, which shall include the Total $55M Capital Contribution to be wire transferred to the attached *Schedule Seven (7): ("Total $55M Business Loans Payoff Account Details")*;

    (w)  <u>Within ten (10) U.S. banking days of the above 4(v)</u>, SUMMERS shall cause Tri-Star Development Holdings to provide Summers & Lowtis the attached :
        (1) *Exhibit J2/3: ("Tri-Star's Acknowledgement of Total $55M Capital Contribution Withdrawal Request")*; and,
        (2) *Exhibit J3/3: ("Copy of $55M Capital Contribution Withdrawal Wire Transfer")*.

    (x)  <u>Within two (2) U.S. banking days of the above 4(w)</u>, SUMMERS, MILOW and CARLOS shall cause Summers & Lowtis to provide AMT Financial the attached:
        (1) *Exhibit K1/2: ("Confirmation of Retiring Total $55M Business Loans*; and,
        (2) *Exhibit J3/3: ("Copy of $55M Capital Contribution Withdrawal Wire Transfer")*.

    (y)  <u>TRANSACTION COMPLETED; AGREEMENT FULLY EXECUTED</u>.

## ARTICLE 5 - Additional Party Rights

    **5.0 Termination.** This Agreement is terminated: (a) in the event that MILOW and CARLOS does not transfer the $15K Expense Fee and the $60K Commitment Fee, as outlined herein; and (b) upon notarized, written termination by SUMMERS or MILOW.

## ARTICLE 6 - Financial Consideration

### 6.1 GROSS Profit Distributions.

    (a) As consideration of services rendered and received by each of the Parties, the GROSS Profits shall be construed to be earned and shall be distributed in United States Dollars, as follows:

<u>**GROSS Transaction Profits:**</u>

| | |
|---|---|
| <u>Managing Member:</u> | |
| 1. Ruby C. Summers | Fifty Two Percent (52%) |
| <u>Non-Managing Member(s):</u> | |
| 1. Ron Milow Miloslavsky | Twenty Four Percent (24%) |
| 2. Nicholas John Carlos | Twenty Four Percent (24%) |

    (b) Unless otherwise agreed to in writing by all the Parties herein, the distributions herein shall be permanent and irrevocable during the Original and Extended Term(s) of this Agreement;

    (c) SUMMERS, MILOW and CARLOS shall cause Ruby C. Summers to be the responsible Party(ies) for the payment of any and all Transaction related and bank related execution, settlement and disbursement charges from its own share of profit distributions.

SUMMERS _____       MILOW _____       CARLOS _____

(d)   Subject to Article 6(1)(c), the Party's respective share of GROSS profits shall be distributed without objection, defense, deductions, setoffs, fees, withholdings, taxation or other charges, to each Party's designated account coordinates, as per the attached *Schedule Eight (8): Individual Wiring Instructions for Profit Participation*.

6.2   **Effect of Using MILOW'S Exit Buyers.** The use of MILOW'S and/or CARLOS' Exit Buyers (rather than those of SUMMERS'), and in reverse, shall in no way affect the financial distributions herein.

## ARTICLE 7

## Confidential Sources and Information, Non-Disclosure and Non-Circumvention

7.1   **Value of Confidential Sources and Reliance.** The Parties each acknowledge the other's investment of substantial time, resources and capital over the years, and within the continuing development of direct and indirect Source relationships; and that the monetary value of these Sources and their related Transactions and information is immeasurable, and substantially represents the majority or entire means of each Party's future income. Therefore, each Party's purpose in exposing and sharing its Source relationships is based substantially upon its reliance of the other Party's representations, performance capabilities and compliance with the Provisions herein.

7.2   **Non-Disclosure and Non-Circumvention.** In realization of the industry's potential for intentional and unintentional disclosure and circumvention of Sources, Transactions and information, and the subsequent loss of Remuneration therefrom, each of the undersigned agrees and warrants that neither they nor their Sources and/or other related and financially interested parties that would benefit from the knowledge and/or use of any of the Party's Sources, Transactions and/or information, in their present or future capacities, regardless of circumstance or location, will directly or indirectly by any means or measure,

make contact with, associate with, conduct business with or accept business from Sources, or will disclose another Party's confidential Source(s), Transaction(s) and/or information to any other third party (collectively referred to as "Dealings") during the Original and Extended Term(s) of this Agreement, and for a period of three (3) years thereafter, unless permitted by the prior express written consent the introducing or subject Party.

7.3   **Restricted Information.** This Agreement shall be kept confidential and is not to be reproduced in any manner whatsoever. Furthermore, this Agreement shall not be given to any third party except those persons entitled to receive financial distributions herein, and those directly involved with the closing of the Transaction contemplated herein. Moreover, each Party hereto expressly prohibits the other from releasing any personal, corporate and/or Transaction information to non pertinent third parties.

## ARTICLE 8 – General Provisions

8.1   **Party Relationship.** This Agreement shall is further created to form a Limited Liability Company, Summers & Lowtis, LLC, in which the Parties hereto shall become Members working under the specific terms outlined in the Operating Agreement for Summers & Lowtis, LLC.

SUMMERS_____   MILOW_____   CARLOS_____

**8.2  Events and Remedies of Default.** Each of the undersigned Parties acknowledge the integrity behind this Agreement and it's intent to protect each other financially, and agrees that any misrepresentation, and/or failure or threatened failure to duly perform or observe any Provision to be performed or observed by any Party, may cause irreparable harm to existing Source relationships and/or cause substantially adverse financial losses (both determinable and undeterminable). The Parties therefore agree, that any such misrepresentation, failure or threatened failure, and any willful, negligent, reckless or fraudulent act or omission that shall directly or indirectly cause or potentially cause a loss, by-passing or obviation of the payment of any potential or designated remuneration, or which directly or indirectly causes or potentially causes harm to or the loss of a Source relationship, shall be considered a material breach hereof. Upon any such breach, the injured Party shall then have the right, but not the obligation, without notice, to exercise any one or more of his/her cumulative legal rights and remedies at law, in contract or in equity, at any time from time to time, singularly, successively or together, and in any order as such Party in its sole discretion may determine, including the remedy of specific performance through any court having equity jurisdiction or through an arbitration tribunal, all without the need to post bond or other security or to prove any amount of actual damage or that money damages would not provide adequate remedy. Minimally, the defaulting Party shall **(i)** be severally and jointly held liable for liquidated damages and for all potential remuneration which the injured Party may have ultimately procured from all adversely affected relationships and Transactions derived through this Agreement, including the cost of all attorney and arbitrator fees, court costs, investigations, expert witnesses, enforcement and collection, and all consequential, incidental, special and indirect damages; and **(ii)** if the defending Party is adjudged to have committed a material breach as defined herein, then the adjudged defending party of such breach shall forfeit and relinquish to the adjudicated injured Party only the Principal Amount invested plus the portion.

**8.3  Arbitration of Dispute.** Any controversy, dispute, breach or claim arising out of or relating to this Agreement, its termination, or the validity hereof, upon the election of the injured or initiating Party,   (i) shall be settled within the injured Party's county and state by final and binding arbitration conducted by an arbitration tribunal pursuant to the rules of the American Arbitration Association, whereby an arbitrator will be chosen by each Party and the arbitrators so chosen will choose a third arbitrator. The arbitrators in aggregate will then decide the matter(s) in dispute by majority vote, and their decision shall be final and binding upon the Parties. If the answering Party fails or refuses to nominate its arbitrator within fifteen days of receiving the initiating Party's written request, or if the two arbitrators named by the Parties fail to elect a third arbitrator within fifteen (15) days of the last arbitrator's appointment, then the office of the American Arbitration Association within the injured Party's county and state shall have the power and authority to appoint the remaining arbitrator(s). The arbitrators' decision or award may be entered into any competent court having jurisdiction thereof or application may be made to any competent court for judicial acceptance of such judgment or award with an order of enforcement. In the event of any procedural matter not covered by the aforesaid rules, the procedural law of the State of Maryland, USA shall govern. The Parties hereby waive their right to any defense of inconvenient venue.

**8.4  Right to Cure Default.** Upon the default of any Provision herein by either Party or its Source's and which default(s) can be fully cured and remedied in good faith by full performance under the Provisions herein prior to the occurrence of actual injury to the other Party, then said default shall be fully cured prior to or immediately upon the other Party's first notification of default(s). Only three (3) curable defaults overall, shall be permitted per Party during the Original and Extended Term(s) of this Agreement. A Party's Fourth (4th) default or a Party's willful delay in remedying a default which may potentially cause injury as defined within Article 8(2), shall be construed to be a material breach of this Agreement regardless of whether injury actually occurs.

SUMMERS _____    MILOW _____    CARLOS _____

8.5 **Indulgences Not Waivers**. All available remedies to an injured Party shall be cumulative, and neither the failure, delay nor intermittent exercise of any one or more of his/her rights, remedies, powers or privileges under this Agreement, at law or in equity, in whole or in part, shall operate as a waiver or preclusion to any further exercise thereof except by operation of law.

8.6 **Hold Harmless**. Notwithstanding anything stated herein to the contrary, each of the Parties agree to hold each of the other Parties hereto and their officers, directors, employees, shareholders, agents, successors and sources within any Transaction, harmless from and against any and all costs, claims, judgments, damages, liabilities, losses and expenses to which each said party may become subject under third party civil suits, federal or state law or otherwise relating to or alleged to be relating to or arising out of errors in judgment, acts, omissions, misstatements or failure to act, when performed in good faith and in the best interest of all concerned parties within the scope of authority conferred upon such party by this Agreement, other Agreement or by law, and which shall not constitute a material breach or default of any part of this Agreement nor be construed or adjudicated as willful misconduct, fraud, culpable or gross negligence, misrepresentation, malfeasance or reckless disregard of duties. If any part of this Article 8(6) shall, for any reason and to any extent, be invalid or unenforceable, this Article shall be construed to exculpate the foregoing persons to the fullest extent possible.

8.7 **Force Majeure**. It is also understood that a signatory cannot be considered or adjudged to be in violation of this Agreement when the violation is involuntary due to situations beyond his/her control, or is unavoidable or unforeseen upon the exercise of due care, examples which include but are not limited to: (1) destruction of subject matter; (2) a third party's impropriety, hindrance, non-cooperation, incompetence, and/or breach; (3) bilateral mistake; (4) theft; (5) court order; (6) requirements by law and regulation; (7) tort or criminal interference; (8) embargo, lockouts, war, riots, insurrection, flood, fire, storm, or other acts of God. Essentially, the spirit behind this agreement is one of mutual trust and confidence and the reliance upon each other to do what is fair and equitable. Performance, reasonably expected and curable shall be resumed as soon as possible after the cessation of such preventing cause.

8.8 **Right to Cure Default**. Upon the default of any Provision herein by either Party or its Source's and which default(s) can be fully cured and remedied in good faith by full performance under the Provisions herein prior to the occurrence of actual injury to the other Party, then said default shall be fully cured prior to or immediately upon the other Party's first notification of default(s). Only three (3) curable defaults per default category, and not more than Five (5) curable defaults overall, shall be permitted per Party during the Original and Extended Term(s) of this Agreement. A Party's Sixth (6th) default or a Party's willful delay in remedying a default which may potentially cause injury, shall be construed to be a material breach of this Agreement regardless of whether injury actually occurs.

8.9 **Outside Commissions and Referral Fees**. For each of the undersigned that may approve, contract or promise referral and/or consulting fees, commissions and remuneration of any kind for its own third party sources, which are not stipulated herein or attached hereto by specific agreement, addendum or exhibit, shall, from its own account, be the sole responsible Party for the payment of same and shall therefore indemnify, save and protect the other Parties and their Sources from and against any and all costs, claims, judgments, damages, liabilities, losses and expenses in relation thereto.

8.10 **Taxes, Imposts, Duties, and Levies**. Each of the Parties and their Sources shall be individually responsible for the payment of taxes, imposts, duties, and levies associated with its own portion of received remuneration.

SUMMERS _CS_          MILOW _JS_          CARLOS _N_

| MOU Agreement (for Project Financing) | Ruby C. Summers |
|---|---|
| MLW05/3-SUM300M | Page 14 of 14 Ron Milow Miloslavsky & Nicholas Carlos |

8.11  **Transaction Code.** The Parties agree that all documents relating to this Transaction will carry the Transaction and Security Codes listed herein and said Codes shall not change for the duration of this Agreement unless otherwise agreed to and signed by all Parties hereto.

8.12  **Contract Assignment.** The Parties hereby agree that this Agreement shall not be assigned or transferred by any Party without the prior written consent of all Parties, and with the full understanding and agreement that the assignee shall abide to all the Provisions of this Agreement.

8.13  **Entire Agreement / Waiver.** This is the sole, complete, and superseding original agreement between the Parties as it relates to the specific Transaction and Security Codes listed herein, and no amendment, modification, separate agreement, condition precedent, understanding, representation, warranty, obligation, inducement, promise, release, cancellation or waiver shall have any force and affect unless expressly set forth herein, signed and attached hereto, and/or is required to be separate and signed by all the Parties herein. Any express written waiver(s) with respect to the specific matter involved shall in no way impair a Party's rights in any other respect, matter or time.

8.14  **Binding upon Successors, Legal Heirs, Executors and Assigns.** All the Provisions set forth herein shall be binding upon and inure to the benefit of each Party's respective legal and/or court appointed heirs, administrators, representatives, estates, trusts, executors, assigns and any and all other successors.

8.15  **Notification:**    Any notice, request, demand, consent or authorization (hereinafter "Notice") required or permitted to be given under this Agreement by any Party to this Agreement shall be in writing and delivered personally, via overnight courier, facsimile or e-mail to:

(i)  **Ruby C. Summers,** an Individual
400 East Pratt Street, 8th Floor
Baltimore, Maryland 21202 (USA)
Phone: (410)444-9443    Fax: (410)444-9446.  E-Fax: (410)510-1664
E-mail address: **ladyboss21234@aol.com**

(ii)  **Ronald Milow Miloslavsky,** an Individual
10108 Peach Parkway, M202
Skokie, Illinois 60076
Phone: (847)287-7661    C/O Fax: (212)484-7298 (CARLOS)
E-mail address: **nyeco@sbcglobal.net**

(iii)  **Nicholas John Carlos,** an Individual
142-30 Sanford Avenue, Unit 2S
Flushing, New York 11355
Phone.: (917) 696-1014    Fax: (212)484-7298
C/O E-mail address: **nyeco@sbcglobal.net**  (MILOW)

(a)  Any address referred to above may be changed by Notice in accordance with the provisions of this Paragraph given to each Party hereto.  Any Notice shall be deemed to have been received when so delivered or, if delivered by telex-facsimile, the second (2nd) half-hour after the transmissions and confirmation of receipt, except if the Notice is received after 5:00 p.m., local time, of the receiving Party. Any Notice received after 5:00 p.m., local time, shall be deemed to have been received the following business day.

SUMMERS _____    MILOW _____    CARLOS _____

8.16  **Recitals.** The Parties agree and acknowledge that the initial recitals of this Agreement form an integral part of the intentions and understanding of the Parties as to the Transaction contemplated herein and are hereby expressly incorporated herein with full force and affect, and shall be considered for all purposes in construing and interpreting this Agreement.

8.17  **Identities.** No Party shall in any way be construed to represent or to be connected to, or to be itself a licensed securities broker, investment advisor, investment company, brokerage firm, financial institution or government agency as defined or required by applicable state and federal laws.

8.18  **Severability and Enforceability of Agreement.** If and when any Provision, both singular and plural, which are or may become unenforceable, invalid, limited or contrary to law in whole or in part, or the inclusion of which affects the validity or enforceability of this Agreement, then this Agreement shall remain in full force, and the invalid and/or unenforceable Provision(s) shall be replaced and amended whenever possible with language that best reflects and preserves the original intent of the Parties to the maximum extent possible and allowed by law.

8.19  **Governing Law.** This Agreement shall be governed by and construed in accordance with the Laws of the State of Maryland.

8.20  **Effects of Counterparts and Facsimile.** This Agreement and its attached addendums and exhibits and their modifications and amendments when executed in any number of carbon or facsimile counterparts at various times and locations, and delivered one to the other, shall be deemed an original when taken together, and constitutes one and the same instrument. Furthermore, as required by Federal Law, each facsimile transmitted counterpart shall bear the sending Party's transmitting terminal identifier (TTI), date and time as stamped electronically by the sender's transmitter.

8.21  **Initialing.** Each page herein, shall bear each Party's initials to indicate their full acceptance.

8.22  **Incorporation.** The exhibits and addendums pursuant to this Agreement and attached hereto, contain further agreements between the parties and are hereby expressly incorporated herein by this reference.

8.23  **Survival of Terms.** The Procuring cause Rule with regard to remuneration and the Non-Circumvention rules herein shall survive beyond the expiration and termination of this Agreement for a period of three (3) years, regardless of the reason or cause for such termination except where limitations and exceptions are provided for by law.

8.24  **Contract Delivery.** Each Party hereto agrees to sign three (3) original copies of this Agreement before a Notary Public, keeping one (1) original copy for itself, and delivering one (1) original copy to each of the other Parties.

8.25  **Expenses.** In the absence of an express agreement to this contract, each Party agrees to bare its own miscellaneous and non-Transaction specific expenses, including but not limited to: due-diligence, telephone, travel, entertainment, mailing, and other business related expenditures.

8.26  **Gender and Number.** When necessary herein, all words and numbers used in the singular shall apply to the plural and all terms used in the masculine shall apply to the feminine and/or neuter genders, and vice versa as the context so requires

SUMMERS _____    MILOW _____    CARLOS _____

| MOU Agreement (for Project Financing) | 46 | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 16 of 16 | Ron Milow Miloslavsky & Nicholas Carlos |

8.27 **Captions**. The captioned subject headings for various paragraphs, are for convenience only and are not to be construed to define, limit, extend or aid in any way, the scope, extent or intent of this Agreement or its Provisions hereof.

8.28 **Offer and Acceptance**. This Agreement is to be signed by all the Parties hereto and returned one to the other within five (5) business days of the date first written above, or this Agreement shall become null and void abnitio. Computer generated and stamped signatures shall not be valid herein.  However, *fax signatures to this Agreement shall be deemed as originals.*

**IN WITNESS WHEREOF,** the undersigned Parties each acknowledge this Agreement to be a full recourse commercial contract, and have had adequate time and opportunity to consult with attorneys and financial advisors of their choosing prior to the execution hereof, and shall each bare the responsibility for their determination not to seek such counsel. The undersigned Parties therefore, have completely read, fully understand, and agree to be legally bound by all the Provisions set forth herein from the first date written above.

**FOR AND ON BEHALF OF** *SUMMERS*:

By: _____     Date Signed: March __31__ , 2005
    Ruby C. Summers           An Individual

**FOR AND ON BEHALF OF** *MILOW*:

By: _____     Date Signed: March _31_, 2005
    Ronald Milow Miloslavsky     An Individual
    Subscribed and sworn to before me

this 31 ST day of MARCH 2005
at Evanston, County of Cook, State of Illinois.

**FOR AND ON BEHALF OF** *CARLOS*:

By: _____     Date Signed: March _31_ , 2005
    Nicholas John Carlos         An Individual

SUMMERS _____     MILOW _____     CARLOS _____

| MOU Agreement (for Project Financing) | A6 | Ruby C. Summers |
| MLW05/3-SUM300M | Page 17 of 17  Ron Milow Miloslavsky & Nicholas Carlos |

### Exhibit A
### Funding Request
*(on Letterhead of Summers & Lowtis, LLC)*

(Date)

AMT Financial
Michael E. Davis, President/CEO
Dallas, Texas
(hereinafter "AMT Financial" or "AMT")

RE:    $55M Business Loan Funding Request to assist a Gas and Power Project

Dear Mr. Davis:

Summers & Lowtis, LLC, a Maryland Limited Liability Company ("Summers & Lowtis"), hereby request AMT Financial to assist Summers & Lowtis in the private funding of our Ukrainian Gas and Power Project (the "Gas and Power project"), as further outlined in the attached Project Synopsis. The Total Funding Requirement for this project is approximately Three Hundred Sixty Four Million US Dollars ($364,000,000.) over a period of ten (10) consecutive years. However, Summers & Lowtis is seeking AMT Financial to assist by providing One (1) Year Business Loan in the Principal Amount of Fifty Five Million US Dollars ($55,000,000.) ("$55M Business Loan") in exchange for our $55M Corporate Promissory Note, bearing an Annual Percent Rate of Twelve Percent (12%), payable in arrears. We are capable of raising the remaining Project Funding Requirement through the various purchase and resale of "investment grade", fixed income securities made available through major money center Banks and Broker-Dealers worldwide.

To assist in ensuring the safe return of the $55M Business Loan to the best of our ability, Summers & Lowtis desires to allocate and transfer the $55M Business Loan, as a $55M Total Capital Contribution, for the various purchase and resale of "investment grade", fixed income securities, arranged through the Managing Members of Tri-Star Development Holdings, LLC, a Principal Investor whose core business is to assist bona fide, development projects, by purchasing securities in which an immediate profit margin of not less than 200 basis points is possible based on historical performance of such investing Market. Thus, Summers & Lowtis is not seeking to disburse the $55M Business Loan directly to the Gas and Power project, which may initially appear to be a risky loan to AMT Financial.

Should you have any questions or concerns regarding this Funding Request, please, contact Ruby C. Summers at (410)444-9443. Summers & Lowtis, LLC is looking forward to establishing an honest, productive and profitable relationship with AMT Financial.

Respectfully submitted,

Ruby C. Summers
Managing Member

SUMMERS _____     MILOW _____     CARLOS _____

| MOU Agreement (for Project Financing) | | Ruby C. Summers |
| MLW05/3-SUM300M | Page 18 of 18  Ron Milow Miloslavsky & Nicholas Carlos | |

### *Exhibit B1/3*
### *AMT'S Conditional Funding Commitment*

- issued by AMT Financial
- issued to Summers & Lowtis, LLC

SUMMERS _____     MILOW _____     CARLOS _____

| MOU Agreement (for Project Financing) | | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 19 of 19 | Ron Milow Miloslavsky & Nicholas Carlos |

### *Exhibit B2/3*
### *Bank Confirmation of the $5M Business Loan*

- issued by AMT Financial's Bank
- addressed to AMT Financial
- provided to Summers & Lowtis, LLC

(Date)

AMT Financial
Michael E. Davis, Account Signatory
Dallas, Texas
(hereinafter "AMT Financial"

RE:   Confirmation of Partial Account Balance

Dear Mr. Davis:

As of today's date, AMT Financial has a balance of at least Five Million US Dollars ($5,000,000.) in account ending <...>. Said funds may be transferred, upon your written request using the bank's Wire Transfer Request Form.

Should you require additional assistance, please contact me at <phone> or any customer representative by dialing <800.....>.

Sincerely,

<Banker with Title>

SUMMERS           MILOW           CARLOS 

| MOU Agreement (for Project Financing) MLW05/3-SUM300M | *AC* Page 20 of 20  Ron Milow Miloslavsky & Nicholas Carlos | Ruby C. Summers |
|---|---|---|

*Exhibit B3/3*
*Delivery Request for $5M Corporate Promissory Note*

- issued by AMT Financial
- issued to Summers & Lowtis, LLC

(Date)

Summers & Lowtis, LLC
Ruby C. Summers, Managing Member
Baltimore, Maryland
(hereinafter "Summers & Lowtis")

RE:    Request for Delivery of $5M Corporate Promissory Note

Dear Mrs. Summers:

We hereby request Summers & Lowtis, LLC to deliver, via overnight bonded courier to the below-listed mailing address, a One (1) Year, Corporate Promissory Note, bearing an Annual Interest of Twelve Percent (12%), payable in arrears and issued by Summers & Lowtis, LLC.

AMT'S Mailing Address fro receipt of the $5M Corporate Promissory Note:
<No P.O. Box, Please>
<>

Within one (1) U.S. banking day of receiving your $5M Corporate Promissory Note, we shall wire transfer the $5M Business Loan to the following account, as per your request:

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Tri-Star Development Holdings, LLC |
| Account Number: | <> |
| Reference: | Summers & Lowtis Capital Contribution |

Furthermore, we have attached hereto a Bank Confirmation of an account balance equivalent to at least the $5M Business Loan.

Sincerely,

Michael E. Davis
President/CEO

SUMMERS _CS_                    MILOW _____                    CARLOS _____

| MOU Agreement (for Project Financing) | 26 | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 21 of 21  Ron Milow Miloslavsky & Nicholas Carlos | |

## *Exhibit C1/2*
## *$5M Corporate Promissory Note*

- issued by Summers & Lowtis, LLC
- issued to AMT Financial, as Beneficiary

SUMMERS _____    MILOW _____    CARLOS _____

| MOU Agreement (for Project Financing) | *4* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 22 of 22 | Ron Milow Miloslavsky & Nicholas Carlos |

### *Exhibit C2/2*
### *$50M Corporate Promissory Note*

- issued by Summers & Lowtis, LLC
- issued to AMT Financial, as Beneficiary

SUMMERS _____     MILOW _____     CARLOS _____

| MOU Agreement (for Project Financing) | *Ak* | Ruby C. Summers |
| MLW05/3-SUM300M | Page 23 of 23 | Ron Milow Miloslavsky & Nicholas Carlos |

## *Exhibit D1/2*
## *BG Wording*

- issued by Toronto Dominion Bank
- copy provided by AMT Financial
- copy provided to Summers & Lowtis

SUMMERS _PCS_          MILOW _P_          CARLOS _R_


| MOU Agreement (for Project Financing) | *Aly* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 24 of 24 | Ron Milow Miloslavsky & Nicholas Carlos |

### *Exhibit D2/2*
### *BG SWIFT Copy*

- issued by Toronto Dominion Bank
- copy provided by AMT Financial
- copy provided to Summers & Lowtis

SUMMERS _CS_          MILOW _____          CARLOS _____

| MOU Agreement (for Project Financing) | *4:* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 25 of 2̶8̶ | Ron Milow Miloslavsky & Nicholas Carlos |

### *Exhibit E*
### *Letter of Request to Invest*

- issued by Summers & Lowtis, LLC
- issued to Tri-Star Development Holdings, LLC

(Date)

Tri-Star Development Holdings, LLC
Michael E. Davis, Managing Member
Dallas, Texas
(hereinafter "Tri-Star")

RE:    Letter of Interest to Participate in Purchasing "Investment Grade", Fixed Income Securities

Dear Mr. Davis:

Summers & Lowtis, LLC, a Maryland Limited Liability Company ("Summers & Lowtis"), hereby request Tri-Star Development Holdings, LLC to accept our request to become Non-Managing Members by our providing a Total $55M Capital Contribution for various purchase and resale of "investment grade", fixed income securities, whereby an immediate profit margin of not less than 200 basis points is possible. However, we are initially interested in providing a $5M Capital Contribution followed by a $50M Capital Contribution approximately four (4) weeks later.

We are seeking your joint efforts, in order to assist our continued financing of a much needed Gas and Power project in Ukraine, where much of the country currently uses coal to power commercial and residential properties. Needless to say, use of coal regrettably reduces the air quality, thereby not being healthy for the local residents. Members of Summers & Lowtis are attempting to fund the infrastructure of gas and power lines commonly used throughout many well-developed countries, such as the United States.

We have hereby attached the following documents for your review and approval of our request:
(1) Background Data of Summers & Lowtis, LLC and its Members; and,
(2) Bank Confirmation of Funds Letter.

Should you have any questions or concerns regarding this Letter of Interest, please, contact Ruby C. Summers at (410)444-9443.  Summers & Lowtis, LLC is looking forward to establishing an honest, productive and profitable relationship with Tri-Star Development Holdings, LLC.

Respectfully submitted,

Ruby C. Summers
Managing Member

SUMMERS _CS_            MILOW _/p_            CARLOS _/C_

| MOU Agreement (for Project Financing) | *44* | Ruby C. Summers |
| MLW05/3-SUM300M | Page 26 of 26  Ron Milow Miloslavsky & Nicholas Carlos | |

### Exhibit F
### Member Acceptance Letter

- issued by Tri-Star Development Holdings, LLC
- issued to Summers & Lowtis, LLC

(Date)

Summers & Lowtis, LLC
Ruby C. Summers, Managing Member
Baltimore, Maryland
(hereinafter "Summers & Lowtis")

RE:    Member Acceptance Letter

Dear Mrs. Summers:

Tri-Star Development Holdings, LLC ("Tri-Star"), is hereby honored to inform you that, based on our due diligence, we have accepted Summers & Lowtis, LLC, to request to become Non-Managing Members of Tri-Star Development Holdings, LLC, by your supplying a Total $55M Capital Contribution in a joint effort to purchase and resale of "investment grade", fixed income securities, whereby an immediate profit margin of not less than 200 basis points is possible.

We understand that you are initially interested in providing a $5M Capital Contribution followed by a $50M Capital Contribution approximately four (4) weeks later.  We accept such arrangement.  However, in order to better serve you with the best securities Market Price available to us, we are attaching the banking details of Tri-Star Development Holdings for receipt of the $5M Capital Contribution.  Said Tri-Star Account has a Principal Deposit of at least Forty Million US Dollars ($40,000,000.).  Tri-Star is agreeing to add your Managing Member as a joint signatory to said account of Tri-Star for added protection.

Once you are ready to proceed with the $50M Capital Contribution, Tri-Star will establish a segregated account titled "Tri-Star Development Holdings, LLC FBO Summers & Lowtis, LLC" ("Joint Member Account"), whereby a Managing Member of Tri-Star Development Holdings and a Managing Member of Summers & Lowtis shall be joint signatories to said joint account.

Please, provide written confirmation of the $5M wire transfer to the Tri-Star account.

Should you have any questions or concerns regarding this Member Acceptance Letter, please, contact me at <Phone>.

Sincerely,

Michael E. Davis
Managing Member


SUMMERS_____    MILOW_____    CARLOS_____

| MOU Agreement (for Project Financing) | *AL* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 27 of 27  Ron Milow Miloslavsky & Nicholas Carlos | |

### *Exhibit G1/3*
### *Request to Transfer $5M Capital Contribution*

- issued by Summers & Lowtis, LLC
- issued to AMT Financial

(Date)

AMT Financial
Michael E. Davis, President/CEO
Dallas, Texas
(hereinafter "AMT Financial" or "AMT")

RE:    Request to Transfer $5M Business Loan as our $5M Capital Contribution to Tri-Star Development

Dear Mr. Davis:

Summers & Lowtis, LLC, a Maryland Limited Liability Company ("Summers & Lowtis"), hereby request AMT Financial to wire transfer, to the below-listed account of Tri-Star Development Holdings, our $5M Business Loan, as our $5M Capital Contribution to Tri-Star Development Holdings, LLC.

| | |
|---|---|
| Bank Name/Address: | ◇ |
| ABA Routing No: | ◇ |
| SWIFT: | ◇ |
| Account Name: | Tri-Star Development Holdings, LLC |
| Account Number: | ◇ |
| Reference: | Summers & Lowtis Capital Contribution |

Please, provide written confirmation of the $5M wire transfer to the Tri-Star account.

Should you have any questions or concerns, please, contact Ruby C. Summers at (410)444-9443.

Respectfully submitted,

Ruby C. Summers
Managing Member

SUMMERS           MILOW           CARLOS 

| MOU Agreement (for Project Financing) | *Ac* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 28 of 28 Ron Milow Miloslavsky & Nicholas Carlos | |

### *Exhibit G2/3*
### *Copy of $5M Capital Contribution Wire Transfer*

- provided by AMT Financial's Bank (through AMT Financial)
- provided to Summers & Lowtis, LLC
- provided to Tri-Star Development Holdings

SUMMERS *CS*            MILOW *To*            CARLOS

| MOU Agreement (for Project Financing) | *4c* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 29 of 29 | Ron Milow Miloslavsky & Nicholas Carlos |

### *Exhibit G3/3*
### *Tri-Star's Receipt of $5M Capital Contribution*

- issued by Tri-Star Development Holdings
- issued to Summers & Lowtis, LLC

(Date)

Summers & Lowtis, LLC
Ruby C. Summers, Managing Member
Baltimore, Maryland
(hereinafter "Summers & Lowtis")

RE:    Acknowledgement of Receiving $5M Capital Contribution

Dear Mrs. Summers:

Tri-Star Development Holdings, LLC ("Tri-Star") hereby confirm our receipt of your company's $5M Capital Contribution.   Your $5M Capital Contribution currently represents <Percentage Amount in Words/Figures> of the Total current Deposit.

We further acknowledge that you have requested any and all profits due to Summers & Lowtis, LLC to be wire transferred to the following account(s):

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC |
| Account Number: | <> |
| Reference: | Dividends/Profits Capital Contribution |

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC |
| Account Number: | <> |
| Reference: | Dividends/Profits Capital Contribution |

Should you have any questions or concerns, please, feel free to contact me.

Respectfully submitted,

Michael E. Davis
Managing Member

SUMMERS _____        MILOW _____        CARLOS _____

| MOU Agreement (for Project Financing) | | Ruby C. Summers |
| MLW05/3-SUM300M | Page 30 of 30  Ron Milow Miloslavsky & Nicholas Carlos | |

### *Exhibit H1/3*
### *Request to Transfer $50M Capital Contribution*

- issued by Summers & Lowtis, LLC
- issued to AMT Financial

(Date)

AMT Financial
Michael E. Davis, President/CEO
Dallas, Texas
(hereinafter "AMT Financial" or "AMT")

RE:    Request to Transfer $50M Business Loan as our $50M Capital Contribution to Tri-Star Development

Dear Mr. Davis:

Summers & Lowtis, LLC, a Maryland Limited Liability Company ("Summers & Lowtis"), hereby request AMT Financial to wire transfer, to the below-listed Members Joint Account, our $5M Business Loan, as our $50M Capital Contribution to Tri-Star Development Holdings, LLC.

Bank Name/Address:         <>
ABA Routing No:            <>
SWIFT:                     <>
Account Name:      Tri-Star Development Holdings, LLC FBO Summers & Lowtis, LLC
Account Number:            <>
Reference:         Summers & Lowtis' Capital Contribution

As per our Conditional Funding Commitment signed on (Date), we have forwarded:
(a)   our $50M Corporate Promissory Note to your office, via overnight bonded courier; and,
(b)   the required $500K Commitment Fee to your account, via wire transfer as further evidenced in the attached Copy of the $500K Commitment Fee Wire Transfer Form.

Please, provide written confirmation of the $50M wire transfer to the Members Joint Account.

Should you have any questions or concerns, please, contact Ruby C. Summers at (410)444-9443.

Respectfully submitted,

Ruby C. Summers
Managing Member

SUMMERS _____    MILOW _____    CARLOS _____

| MOU Agreement (for Project Financing) | *4* | Ruby C. Summers |
| MLW05/3-SUM300M | Page 31 of 31  Ron Milow Miloslavsky & Nicholas Carlos | |

### *Exhibit H2/3*
### *Copy of $50M Capital Contribution Wire Transfer*

- provided by AMT Financial's Bank (through AMT Financial)
- provided to Summers & Lowtis, LLC
- provided to Tri-Star Development Holdings

SUMMERS _RCS_          MILOW _RS_          CARLOS _N_

| MOU Agreement (for Project Financing) | 46 | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 32 of 32 | Ron Milow Miloslavsky & Nicholas Carlos |

## *Exhibit H3/3*
### *Tri-Star's Receipt of $50M Capital Contribution*

- issued by Tri-Star Development Holdings
- issued to Summers & Lowtis, LLC

(Date)

Summers & Lowtis, LLC
Ruby C. Summers, Managing Member
Baltimore, Maryland
(hereinafter "Summers & Lowtis")

RE:    Acknowledgement of Receiving $50M Capital Contribution

Dear Mrs. Summers:

Tri-Star Development Holdings, LLC ("Tri-Star") hereby confirm our receipt of your company's $50M Capital Contribution.   Your $50M Capital Contribution currently represents <Percentage Amount in Words/Figures> of the Total current Deposit.

We further acknowledge that you have requested any and all profits due to Summers & Lowtis, LLC to be wire transferred to the following account(s):

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC |
| Account Number: | <> |
| Reference: | Dividends/Profits |

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC |
| Account Number: | <> |
| Reference: | Dividends/Profits |

Should you have any questions or concerns, please, feel free to contact me.

Respectfully submitted,

Michael E. Davis
Managing Member

SUMMERS_____    MILOW_____    CARLOS_____

| MOU Agreement (for Project Financing) | *46* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 33 of 33 Ron Milow Miloslavsky & Nicholas Carlos | |

## *Exhibit I*
### *Copy of $500K Commitment Fee Wire Transfer*

- provided by Summers & Lowtis' Bank (through Summers & Lowtis)
- provided to AMT Financial

SUMMERS_____      MILOW_____      CARLOS_____

| MOU Agreement (for Project Financing) | 46 | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 34 of 34 | Ron Milow Miloslavsky & Nicholas Carlos |

### *Exhibit J1/3*
### *Request to Withdraw $55M Capital Contribution*

- issued by Summers & Lowtis, LLC
- issued to Tri-Star Development Holdings, LLC

(Date)

Tri-Star Development Holdings, LLC
Michael E. Davis, President/CEO
Dallas, Texas
(hereinafter "Tri-Star")

RE:   Request to Withdraw our $55M Capital Contribution with Tri-Star Development

Dear Mr. Davis:

Summers & Lowtis, LLC, a Maryland Limited Liability Company ("Summers & Lowtis"), hereby request Tri-Star Development Holdings, LLC to wire transfer, to the below-listed Account, our remaining profits and $55M Capital Contribution to Tri-Star, as we are withdrawing our position as Non-Managing Members of Tri-Star Development Holdings, LLC. The purpose of our withdrawal is that we have raised enough capital in order to proceed in funding our Gas and Power project.

| | |
|---|---|
| Bank Name/Address: | ◇ |
| ABA Routing No: | ◇ |
| SWIFT: | ◇ |
| Account Name: | Summers & Lowtis, LLC FBO AMT Financial |
| Account Number: | ◇ |
| Reference: | Return of Summers & Lowtis' Capital Contribution |

Please, provide written confirmation of the $55M wire transfer to the above-listed account. Thank you for assisting us in accomplishing our financial goal.

Should you have any questions or concerns, please, contact Ruby C. Summers at (410)444-9443.

Respectfully submitted,

Ruby C. Summers
Managing Member

SUMMERS _____        MILOW _____        CARLOS _____

| MOU Agreement (for Project Financing) | *46* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 35 of 35 | Ron Milow Miloslavsky & Nicholas Carlos |

### *Exhibit J2/3*
### *Tri-Star's Acknowledgement of $55M Capital Contribution Withdrawal Request*

     - issued by Tri-Star Development Holdings
     - issued to Summers & Lowtis, LLC

(Date)

Summers & Lowtis, LLC
Ruby C. Summers, Managing Member
Baltimore, Maryland
(hereinafter "Summers & Lowtis")

RE:    Acknowledgement of $55M Capital Contribution Withdrawal Request

Dear Mrs. Summers:

Tri-Star Development Holdings, LLC ("Tri-Star") hereby confirm receipt of your request to withdraw the $55M Capital Contribution of Summers & Lowtis, LLC.

We attached hereto a copy of the Wire Transfer for the Return of your remaining profits and $55M Capital Contribution to the below-listed account(s), as per your request.

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC FBO AMT Financial |
| Account Number: | <> |
| Reference: | Return of Summers & Lowtis' Capital Contribution |

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC |
| Account Number: | <> |
| Reference: | Dividends/Profits |

Should you have any questions or concerns, please, feel free to contact me. It has been a pleasure assisting you to accomplish your financial goal in partially funding your Gas and Power project.

Respectfully submitted,

Michael E. Davis
Managing Member

SUMMERS _____    MILOW _____    CARLOS _____

| MOU Agreement (for Project Financing) | *AL* | Ruby C. Summers |
| MLW05/3-SUM300M | Page 36 of 36  Ron Milow Miloslavsky & Nicholas Carlos |

## *Exhibit J3/3*
### *Copy of $55M Capital Contribution Wire Transfer*

- provided by Tri-Star Development Holding's Bank (through Tri-Star)
- provided to Summers & Lowtis, LLC

SUMMERS _____  MILOW _____  CARLOS _____

| MOU Agreement (for Project Financing) | *46* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 37 of 37 | Ron Milow Miloslavsky & Nicholas Carlos |

### *Exhibit K1/2*
### *Confirmation to Retire Total $55M Business Loans*

- issued by Summers & Lowtis, LLC
- issued to AMT Financial

Date)

AMT Financial
Michael E. Davis, President/CEO
Dallas, Texas
(hereinafter "AMT Financial" or "AMT")

RE:    Confirmation to Retire our Total $55M Business Loans with AMT Financial

Dear Mr. Davis:

Summers & Lowtis, LLC, a Maryland Limited Liability Company ("Summers & Lowtis"), hereby confirm that we have wire transferred, to the below-listed account, a Principal Amount of (Amount in Words/Figures), representing our Total $55M Business Loans PLUS the required Interest-to-date.  The transfer of said Principal Amount stipulates the retirement of our Total $55M Business Loans outstanding with AMT Financial. As per the terms of our total $55M Corporate Promissory Notes, we are no longer financially liable for any part of the Total $55M Business Loans.

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC FBO AMT Financial |
| Account Number: | <> |
| Reference: | Return of Summers & Lowtis' Capital Contribution |

As further evidence of the $55M wire transfer, we have attached hereto a copy of the Wire Transfer executed by the Bank (or Broker-Dealer) for Tri-Star Development Holdings, LLC FBO Summers & Lowtis, LLC.

Should you have any questions or concerns, please, contact Ruby C. Summers at (410)444-9443.  Thank you for assisting Summers & Lowtis in accomplishing our financial goal of partially funding the Gas and Power project of our Non-Managing Members.

Respectfully submitted,

Ruby C. Summers
Managing Member

SUMMERS _CS_          MILOW _____          CARLOS _____

| MOU Agreement (for Project Financing) | 46 | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 38 of 38  Ron Milow Miloslavsky & Nicholas Carlos | |

### *Exhibit K2/2*
### *AMT's Acknowledgement of $55M Business Loans' Payoff*

- issued by AMT Financial
- issued to Summers & Lowtis, LLC

(Date)

Summers & Lowtis, LLC
Ruby C. Summers, Managing Member
Baltimore, Maryland
(hereinafter "Summers & Lowtis")

RE:     Acknowledgement of $55M Business Loans' Payoff

Dear Mrs. Summers:

AMT Financial ("AMT Financial") hereby confirm receipt, in the below-listed account, of a Principal Amount of (Amount in Words/Figures), representing your Total $55M Business Loans PLUS the required Interest-to-date.   As per the terms of your total $55M Corporate Promissory Notes, we hereby further acknowledge that you are no longer financially liable for any part of the Total $55M Business Loans.

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC FBO AMT Financial |
| Account Number: | <> |
| Reference: | Return of Summers & Lowtis' Capital Contribution |

Should you have any questions or concerns, please, contact feel free to contact me.  It has been a pleasure assisting you to accomplish your financial goal in partially funding your Gas and Power project.

Sincerely,

Michael E. Davis
President/CEO

SUMMERS _____     MILOW _____     CARLOS _____

| MOU Agreement (for Project Financing) | | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 39 of 39 | Ron Milow Miloslavsky & Nicholas Carlos |

## *Schedule One (1)*
## *$60K Commitment Fee Account*

- Account Details of the Accounting Department of AMT Financial


Bank Name/Address:     <>
ABA Routing No:        <>
SWIFT:                 <>
Account Name:          <>
Account Number:        <>
Reference:        $60K Commitment Fee of Summers & Lowtis, LLC


SUMMERS *RCS*                MILOW                CARLOS

| MOU Agreement (for Project Financing) | *Hc* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 40 of 48 | Ron Milow Miloslavsky & Nicholas Carlos |

### *Schedule Two (2)*
### *$15K Expense Fee Account*

- Account Details of SUMMERS, as reimbursement of said Fee

Bank Name/Address:    Bank of America
ABA Routing No:        <>
SWIFT:                 <>
Account Name:          Donald B. Summers & Associates
Account Number:        <>
Reference:             $15K Expense Fee of Summers & Lowtis, LLC

SUMMER_____            MILOW_____            CARLOS_____

| MOU Agreement (for Project Financing) | *At* | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 41 of 4? Ron Milow Miloslavsky & Nicholas Carlos | |

## Schedule Three (3)
### AMT's Acknowledgement of Required Fees

- issued by AMT Financial
- issued to Summers & Lowtis, LLC

(Date)

Summers & Lowtis, LLC
Ruby C. Summers, Managing Member
Baltimore, Maryland
(hereinafter "Summers & Lowtis")

RE:    Acknowledgement of Receiving Required Expense and Commitment Fees

Dear Mrs. Summers:

AMT Financial ("AMT Financial") hereby confirm receipt of the required Expense and Commitment Fees, as per our Conditional Funding Commitment dated <>.

Should you have any questions or concerns, please, contact feel free to contact me.

Sincerely,

Michael E. Davis
President/CEO

SUMMERS _____    MILOW _____    CARLOS _____

### *Schedule Four (4)*
### *Summers & Lowtis' Profit Account Details*

- Profit Account Details of Summers & Lowtis

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Summers & Lowtis, LLC |
| Account Number: | <> |
| Reference: | Dividends/Profits for Summers & Lowtis |

SUMMERS _CS_          MILOW _____          CARLOS _____

### *Schedule Five (5)*
### *Tri-Star's Account Details*

- Account Details of Tri-Star Development Holdings for $5M Capital Contribution
  from Summers &Lowtis

| | |
|---|---|
| Bank Name/Address: | <> |
| ABA Routing No: | <> |
| SWIFT: | <> |
| Account Name: | Tri-Star Development Holdings, LLC |
| Account Number: | <> |
| Reference: | Summers & Lowtis' $5M Capital Contribution |

SUMMERS _____    MILOW _____    CARLOS _____

### *Schedule Six (6)*
### *Members' Joint Account Details*

- Account Details of Tri-Star Development Holdings, LLC FBO Summers & Lowtis, LLC

Bank Name/Address:    ◇
ABA Routing No:    ◇
SWIFT:    ◇
Account Name:    Tri-Star Development Holdings, LLC FBO Summers & Lowtis, LLC
Account Number:    ◇
Reference:    Summers & Lowtis' $55M Capital Contribution

SUMMERS _RCS_                    MILOW_____                    CARLOS_____

| MOU Agreement (for Project Financing) | 46 | Ruby C. Summers |
|---|---|---|
| MLW05/3-SUM300M | Page 45 of 45 | Ron Milow Miloslavsky & Nicholas Carlos |

## *Schedule Seven (7)*
### *Total $55M Business Loans' Payoff Account Details*

- Account Details of Summers & Lowtis, LLC FBO AMT Financial

Bank Name/Address:      <>
ABA Routing No:          <>
SWIFT:                   <>
Account Name:            Summers & Lowtis, LLC FBO AMT Financial
Account Number:          <>
Reference:               Return of Summers & Lowtis' $55M Capital Contribution

SUMMERS_____    MILOW_____    CARLOS_____

| | |
|---|---|
| MOU Agreement (for Project Financing) | Ruby C. Summers |
| MLW05/3-SUM300M | Page 46 of 46  Ron Milow Miloslavsky & Nicholas Carlos |

## Schedule Eight (8)

### Individual Member Instructions
### For Profit Distributions

---

**MANAGING MEMBER:**

Bank Name: _____ Bank Address:_____

ABA Routing No.:_____ SWIFT:_____Telex:_____

Direct Fax: _____ Direct Phone:_____

Account Title:   (for Ruby C. Summers)   Account Number:_____

Transfer Amount:   <52% of GROSS Profits>_____ Reference:  MLW05/3-SUM300M

---

**NON-MANAGING MEMBERS:**

Bank Name: _____ Bank Address:_____

ABA Routing No.:_____ SWIFT:_____Telex:_____

Direct Fax: _____ Direct Phone:_____

Account Title:  (for Ronald Milow Miloslavsky),  Account Number:_____

Transfer Amount:  <24% of GROSS Profits>_____ Reference:  MLW05/3-SUM300M


Bank Name: _____ Bank Address:_____

ABA Routing No.:_____ SWIFT:_____Telex:_____

Direct Fax: _____ Direct Phone:_____

Account Title:  (for Nicholas John Carlos)_____ Account Number:_____

Transfer Amount:  <24% of GROSS Profits>_____ Reference:  MLW05/3-SUM300M

---

SUMMERS _____   MILOW _____   CARLOS _____

**2**

# EXHIBIT 2

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

---

In the Matter of the Arbitration between

Re: 51 181 00614 06
    Ronald Miloslavsky; Nicholas Carlos (Claimants)
    and
    Ruby C. Summers  (Respondent)
    - Chicago, Illinois

Case Manager: Wilma Rooney

---

## AWARD OF ARBITRATOR

On April 3, 2007, I entered an Order recounting the circumstances that led to my setting the final hearing in this matter for April 17, 2007.  On April 23, 2007, I entered an Order recounting the events leading to the April 17 hearing, and the events that occurred on April 17, 2007.  The respondent, Ruby Summers, did not attend the April 17, 2007 hearing, despite having received notice served upon her.  My order of April 23, 2007 provided the Respondent had until April 27, 2007 to submit her position with respect to punitive damages.  The Case Manager served notice to that effect on Respondent.  Respondent made no response, either orally or in writing, to my Order of April 17, 2007.  Accordingly, the proofs were closed on April 27, 2007.  What follows is my final award.

    1.  Based upon the evidence presented to me, I find that Respondent Ruby Summers committed a material breach of the Memorandum of Understanding between the parties, dated March 31, 2005 (the "MOU").  I further find that Respondent engaged in willful, deliberate, actual fraudulent conduct in her dealings with Claimants, and that Respondent breached her fiduciary duties to Claimants.  I further find that Respondent has failed willfully to participate fairly and reasonably in this arbitration proceeding, and breached the agreement she made with Claimants and the Arbitrator as recounted in my Orders of March 12 and April 3, 2007.  Under applicable law and paragraph 8.2 of the MOU, these circumstances entitle Claimants to an award of both actual and punitive damages.

    2. Accordingly,  in accordance with paragraph 8.2 of the MOU:

        (1)  I award Claimants actual damages in the amount Ninety Four Thousand Two Hundred Sixty Three Dollars and Twenty Cents ($94,263.20) for the actual damages sustained by the Claimants, and attorney's fees of Thirty One Thousand Four Hundred Twenty One Dollars and Six Cents ($31,421.06) for a total award of One Hundred Twenty Five Thousand Six Hundred Eighty Four Dollars and Twenty Six Cents ($125,684.26).

        (2)  I award Claimants the amounts paid by Claimants for the administrative fees of the American Arbitration Association totaling $2,550.00, and the compensation of the arbitrator totaling $3,750.00.  Therefore, Respondent shall reimburse Claimants the sum of $4,425.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimants.

        (3)  I award Claimants punitive damages in the amount of $250,000.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

_____5/23/07_____
Date

_____
Thomas P. Sullivan